IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| TIMOTHY TAVARUS RIVERS, | : | |
| --- | --- | --- |
| Plaintiff, | : | |
| v. | : | CASE NO.: 5:15-CV-388 (LJA) |
| SHERIFF DAVID DAVIS, | : | |
| Defendant. | : | |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. 54). For the following reasons, Defendant's Motion is **GRANTED**.

## BACKGROUND[1]

Plaintiff Timothy Rivers, an African-American male, was hired by the Macon Police Department in February 2010. (Doc. 54-2, ¶ 2). Plaintiff was certified as an Explosive Ordinance Device (EOD) K-9 handler, and had been assigned to partner with EOD K-9 Arco in August 2013. (Doc. 56, ¶ 8). On January 1, 2014, the City of Macon and Bibb

---

[1] The relevant facts are derived from the Complaint (Doc. 1), Plaintiff's Supplements to the Complaint (Docs. 12, 14, 15), Defendant's Answer to the Complaint (Docs. 18, 21), Defendant's Statement of Undisputed Facts (Doc. 54-2), and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in the light most favorable to Plaintiff as the nonmoving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Plaintiff argues that the affidavits presented by Defendant in conjunction with his Motion are "frivolous" because they were all written by "white deputies." "The Eleventh Circuit, in limited circumstances, allows a court to disregard an affidavit as a matter of law when, without explanation, it flatly contradicts his or her own prior deposition testimony for the transparent purpose of creating a genuine issue of fact where none existed previously." *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016). Plaintiff does not identify, and the Court does not find, any such discrepancies. Accordingly, pursuant to Federal Rule of Civil Procedures 56, the Court considers the affidavits filed by Defendant.

1

County were consolidated to form a unified governing body known as Macon-Bibb County. (Doc. 54-2, ¶ 1). As a result of the consolidation, the Macon Police Department merged into the Bibb County Sheriff's Office and Plaintiff was sworn in as a deputy sheriff. *Id.* at ¶¶ 1-2.

In February 2014, Sheriff Davis's office received two complaints regarding traffic stops conducted by Plaintiff, both of which included citations for obscured license tags on the vehicle. (Doc. 56, ¶¶ 28, 29). Sheriff Davis states that no disciplinary action was imposed based on these complaints. *Id.* at ¶ 31. Instead, Plaintiff participated in an employee counseling session with his lieutenant, who suggested that Plaintiff consider issuing courtesy warnings for obscured tags rather than issuing citations. *Id.* According to Plaintiff, several employees have called him to ask if he would dismiss traffic citations. (Doc. 58 at 69:1-6). Plaintiff states that he never dismissed traffic citations based on these requests. *Id.* According to Plaintiff, Sheriff Davis had "a lot of [his] citations changed." *Id.* at 70:2-9.

In December 2014, Plaintiff's ex-girlfriend and her mother filed a Citizen's Complaint against Plaintiff relating to domestic disturbances at Plaintiff's house. (Doc. 54-2, ¶ 10). Dispatch records indicate that Bibb County Sheriff's Office deputies were sent to either Plaintiff's residence or Plaintiff's mother's residence, which is next door, six times between November 24, 2014 and December 2, 2014. *Id.* at ¶ 11. Chief Deputy Russell Nelson directed that the Citizen's Complaint be investigated by the Office of Professional Standards, Internal Affairs. *Id.* at ¶ 12. After the Complaint was filed, but before the Internal Affairs investigation was complete, Colonel Henderson Carswell, with the approval of Chief Deputy Nelson, moved Plaintiff from road-duty to desk-duty in the Teleserve Unit. *Id.* at ¶ 15. It is not unusual for a deputy sheriff to be removed from road duty when he is under investigation for conduct alleged to have occurred during a deputy's interaction with a citizen or where a deputy is believed to be not fit for road duty. *Id.* at ¶ 15.

On January 28, 2015, after the completion of the Internal Affairs investigation, Chief Deputy Nelson issued a written reprimand to Plaintiff, indicating that he violated the Department's written disciplinary policy, "General Order 660, Conduct and Discipline." *Id.* at ¶¶ 5, 16. Specifically, the reprimand notified Plaintiff that he had been found to have violated three provisions: 1) Unbecoming Conduct: "Employees shall conduct themselves at

all times, both on and off duty, in such a manner as to reflect favorably on the Sheriff's Office."; 2) Intervention: "An employee confronted with a situation involving family members or friends of the employee, and where law enforcement action is required, will not intervene unless an emergency exists, without permission of a supervisor."; 3) Sheriff Canine Maintenance: "Handlers will be responsible for the health and welfare of their assigned canines, both on and off duty." (Doc. 55-1 at 1-1). The reprimand notified Plaintiff that he was being reassigned to duty in the Corrections Division, which is the division responsible for operation, security, and maintaining order in the Bibb County Law Enforcement Center. (Doc. 54-2, ¶¶ 5, 16). Plaintiff had some training in corrections, as immediately after consolidation, any deputy sheriff, including Plaintiff, who had not previously worked in Corrections for the Bibb County Sheriff's Office was required to attend an in-service class entitled, "Working with Inmates." *Id.* at ¶¶ 8-9.

On February 23, 2015, Plaintiff met with Sheriff Davis and Chief Nelson to discuss his reassignment. (Doc. 56, ¶¶ 56-58; Doc. 58 at 65:9-14). At the meeting, Plaintiff and Sheriff Davis discussed the written reprimand and the underlying citizen's complaint that spawned the investigation. (Doc. 56, ¶¶ 56-57). Sheriff Davis also mentioned the citations Plaintiff had written for obscured tags at this meeting, although they were not mentioned in the written reprimand. (Doc. 58 at 66:2-6).

Duty assignments generally are made to meet operational needs, address performance problems with individual deputies, or to facilitate deputies' training across divisions. *Id.* at ¶ 22. Plaintiff's reassignment did not result in a change in salary, rank, job grade, job title, or benefits of employment. *Id.* Plaintiff's eligibility for promotions and salary increases did not change as a result of his reassignment. *Id.* at ¶ 19. The only change to Plaintiff's compensation resulted from the fact that he no longer had a K-9 partner. *Id.* at ¶ 20. As a result, Plaintiff was no longer given "canine maintenance pay," which is reimbursement for the maintenance of a K-9 partner. *Id.* Furthermore, Plaintiff was still allowed to work overtime hours while assigned to the Corrections Division. *Id.* at ¶ 21. Plaintiff resigned from the Bibb County Sheriff's Office on March 2, 2015. *Id.* at ¶ 23.

## PROCEDURAL HISTORY

Plaintiff Timothy Tavarus Rivers, proceeding *pro se*, initiated this case on October 6, 2015 (Doc. 1) and filed supplemental complaints on January 26, 2017 (Doc. 12), March 4, 2017 (Doc. 14), and March 16, 2016 (Doc. 15). Defendant David Davis, in his official capacity as Bibb County Sheriff, answered Plaintiff's Complaints on April 1, 2016. (Doc. 18). Defendants Macon Bibb Georgia, Russell Nelson, Chris Patterson, Brad Wolfe, Eric Walker, Jason Kellum, Kendall Countryman, Cara Cotton, and David Davis in his individual capacity were dismissed by the Court's Order of October 28, 2016. (Doc. 38). On February 23, 2017, Defendant Davis filed a Motion for Summary Judgment. (Doc. 54). Plaintiff responded on March 6, 2017 (Doc. 59), and Defendant timely replied on March 20, 2017. (Doc. 64). Accordingly, Defendant's Motion (Doc. 54) is now ripe for review. *See* M.D. Ga. L.R. 7.3.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) *citing Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24.

Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or show that there is some metaphysical doubt as to the material facts." *Matsuhita*, 475 U.S. at 586 (citations and internal quotations omitted). Instead, the nonmovant must point to evidence in the record that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) *quoting Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form"). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

Local Rule 56 requires that a respondent attach to the response "a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine dispute to be tried." M.D. Ga. L.R. 56. "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials shall be deemed to have been admitted, unless otherwise inappropriate." *Id.* Because Plaintiff failed to attach a separate statement of facts to its response, Defendants' statement of facts is deemed to have been admitted. *See Mason v. George*, 24 F. Supp. 3d 1254, 1260 (M.D. Ga. 2014). In the Eleventh Circuit, "a district court cannot grant a motion for summary judgment based on default or as a sanction for failure to properly respond." *U.S. v. Delbridge*, 2008 WL 1869867, at *3 (M.D. Ga. Feb. 22, 2008) *citing Trustees of Central Pension Fund of Int'l Union of Operating Eng'rs and Participating Emp'rs v. Wolf*

*Crane Serv., Inc.*, 374 F.3d 1035, 1039 (11th Cir. 2004); *see also Mason*, 24 F. Supp. 3d at 1260. Rather, the Court is "required to make an independent review of the record" and assess the merits of the arguments before deciding the summary judgment motion; however, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Mason*, 24 F. Supp. 3d at 1260. The Court is also not obligated to "read minds" or "construct arguments or theories that a party has failed to raise in briefing." *Id.* at 1261.

## DISCUSSION

I. **Disparate Treatment**

Title VII makes it unlawful for employers "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff argues that Defendants violated Title VII by transferring Plaintiff because of his race. "Disparate treatment claims require proof of discriminatory intent either through direct or circumstantial evidence." *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). Direct evidence is evidence that "establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Id.* Plaintiff presented no direct evidence in this case. While Plaintiff alleges race discrimination, the only race-based allegations are that Defendant Davis and Lieutenant Patterson, a former defendant, are members of the Ku Klux Klan. There is no evidence to support these allegations, which have been roundly denied by Defendants.[2]

---

[2] Plaintiff accuses Lieutenant Patterson and Sheriff David Davis of belonging to the Ku Klux Klan (KKK). *Id.* at ¶¶ 27-28. Plaintiff bases his contention that Lieutenant Patterson is a KKK member based upon his "perception of [Patterson's] ways" and offers no actual evidence to support this allegation. (Doc. 58 at 109:7-13). Lieutenant Patterson states that Plaintiff's allegation is "patently and unquestionably untrue," and that he does not and will not "believe in white supremacy or hold or harbor racist views." (Doc. 54-4, ¶ 15). Plaintiff's allegation that Sheriff Davis is a KKK member is based on a photograph of Sheriff Davis holding a paper towel with eye holes cut out over his face. (Doc. 58 at 84-85). Sheriff Davis states that this photo was taken as a candid by the Sheriff's Office yearbook photographer when Sheriff Davis jokingly brought out a stack of towels as pretend masks for the drug unit, who had complained about having their photos taken. (Doc. 56, ¶¶ 32-38). Sheriff Davis denies membership in the KKK and states that he finds "views of white supremacy repugnant." *Id.* at 39. Plaintiff offers no evidence that contradicts Sheriff Davis's explanation of the photograph.

6

When there is no direct evidence of discrimination, a plaintiff may prove discrimination through circumstantial evidence, using the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008). To establish a prima facie case for disparate treatment under this framework, Plaintiff must show that: (1) he is a member of a protected class; (2) he was subject to adverse employment action; (3) his employer treated similarly situated white employees more favorably; and (4) he was qualified to do the job. *Id.* If Plaintiff satisfies these elements, then Defendant must show a legitimate, non-discriminatory reason for its employment action. *Burke-Fowler v. Orange County, Fla*, 447 F.3d 1319, 1323 (11th Cir. 2006). To defeat a motion for summary judgment, the Plaintiff must then prove that the reason provided by the defendant is a pretext for unlawful discrimination. *Id.*

Plaintiff has failed to show that he was subject to an adverse employment action. The Eleventh Circuit recognizes that "transfer to a different position can be 'adverse' if it involve[s] a reduction in pay, prestige, or responsibility."[3] *Hinson v. Clinch Cty., Ga. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000). "It is not enough that a transfer imposes some *de minimis* inconvenience or alteration of responsibilities, however, because all transfers generally require an employee to engage in some learning, work with new people, and accept new responsibilities." *Shepard v. United Parcel Serv., Inc.*, 470 F. App'x 726, 731 (11th Cir. 2012) (citing *Doe v. Dekalb Cty. Sch. Dist.*, 145 F.3d 1411, 1453 (11th Cir. 1998)). Furthermore, "the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001)."

It is undisputed that reassignment between divisions is common, and that such transfers occur for a variety of reasons, including meeting operational needs, facilitating training, or addressing performance problems. It is also undisputed that Plaintiff's transfer to

---

[3] Although Plaintiff refers to his assignment in Corrections as a demotion, the test for whether change in work assignments constitutes an adverse employment action is the same, regardless of whether the change is referred to as a transfer or a demotion. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1244-45 (11th Cir. 2001); *Kidd v. Mando American Corp.*, 731 F. 3d 1196, 1203 (11th Cir. 2008) (addressing an "unlawful demotion" claim); *Webb-Edwards v. Orange Cty. Sheriff's Office*, 525 F.3d 1013, 1030-33 (addressing "transfer" claim).

7

the Corrections Division did not result in a change in salary, rank, job grade, job title, benefits, and eligibility for promotions or future salary increases. Therefore, the Court will focus its inquiry on whether Plaintiff's transfer resulted in a loss of prestige or responsibility. Courts have found a loss of prestige and responsibility when the plaintiff showed that the new position resulted in reduced leadership responsibilities, see *Cook v. Gwinnett County School District*, 414 F.3d 1313, 1318 (11th Cir. 2005); included a shift from technical to administrative work, see *Holland v. Gee*, 677 F.3d 1047, 1058 (11th Cir. 2012); and when testimony in the record corroborated that the new position was more menial and less prestigious than the prior position, see *Calvert v. Hicks*, 510 F. Supp. 2d 1164, 1170 (N.D. Ga. 2007). While Plaintiff was no longer assigned a K-9 partner, this change in responsibility did not result in a loss of leadership responsibilities, a shift from technical to administrative work, or otherwise result in Plaintiff being assigned to menial labor. Thus, as Plaintiff has failed to establish that his transfer resulted in a loss of prestige or responsibility, his transfer does not constitute an adverse employment action. *See Cheathem v. DeKalb Cty., Ga.*, No. 16-11068, 2017 WL 1046087 at * 7 (11th Cir. 2017) (concluding that the plaintiff's transfer was not an adverse "because it did not involve a reduction in pay, prestige or responsibility" and there was no other reason why a reasonable person would view the action as adverse).

Even if Plaintiff had suffered an adverse employment action, Plaintiff has also failed to show that his employer treated similarly situated persons outside of his protected class more favorably. In Plaintiff's response to Defendant's Motion for Summary Judgment, Plaintiff mentions three officers that he argues "should have been fired:" Deputy Brian Mathis, Ms. Carswell, and Deputy David Whigham. (Doc. 59 at 2-3). Plaintiff has not presented any evidence concerning these officers and they are not mentioned in the depositions and affidavits relating to this case. The non-moving party has the burden to rebut moving party's arguments with "affidavits or other relevant and admissible evidence beyond the pleadings." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012). Plaintiff has failed to do so. Moreover, Plaintiff does not allege that Ms. Carswell and

Deputy Whigham are outside of his protected class. With respect to Ms. Carswell,[4] Plaintiff does not specify her race, and with respect to Deputy David Whigham, Plaintiff acknowledges that Deputy Whigham is also an African-American male. (Doc. 59 at 2-3). Thus, these individuals are not "similarly situated employees outside of [his] protected class." Although Plaintiff alleges that Deputy Mathis is white, and outside of his protected class, Plaintiff does not allege that they are similarly situated. While Plaintiff alleges that, like him, Deputy Mathis did not properly care for his K-9 companion, Plaintiff's reprimand was the result of failing to properly care for his K-9 as well as violating the "Unbecoming Conduct" and "Intervention" provisions in the standards of conduct. When a plaintiff alleges discriminatory discipline, "the quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) *quoting Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). Because Plaintiff's written reprimand was for two violations in addition to the failure to properly care for his K-9 companion, Plaintiff and Deputy Mathis would are not similarly situated.

      The *McDonnell Douglas* framework, however, "is not the *sine qua non* for a plaintiff to survive summary judgment in a discrimination case." *Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013). Instead, "the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "A triable issue of fact exists if the record, viewed in the light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Id.* (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)).

      Plaintiff argues that Defendant had discriminatory intent because he believes that Sheriff Davis and Lieutenant Patterson are members of the KKK. Plaintiff does not support this allegation with any colorable evidence, other than his own opinion and a photo of Sheriff Davis holding a napkin over his face. Plaintiff presents no evidence that the photo

---

[4] Plaintiff does not provide Ms. Carswell's name or rank. He refers to her as Colonel Carswell's niece and states that she is also an employee of the Bibb County Sheriff's Office. (Doc. 59 at 2).

was in any way related to the KKK. There is uncontradicted evidence, however, that Sheriff Davis jokingly made masks for members of the narcotics unit, who had previously complained about the need to be anonymous, on photo day to hide their identities. Plaintiff also argues that Defendant showed discriminatory intent by giving too much credence to his ex-girlfriend's complaints. Plaintiff argues that Defendant believed his ex-girlfriend because she is white. Plaintiff does not point to any evidence in the record that would substantiate such a claim. Moreover, Plaintiff does not identify any actual behavior by Sheriff Davis or any other employee indicating racial bias or that supports a finding of discriminatory intent. As Plaintiff has not produced "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent," *Smith*, 644 F.3d at 1328, summary judgment in favor of the Defendant is appropriate on Plaintiff's discrimination claim.

Finally, Plaintiff was not constructively discharged. "A constructive discharge occurs when a discriminatory employer imposes working conditions that are so intolerable that a reasonable person in the employee's position would have been compelled to resign." *Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 978 (11th Cir. 2003) (internal quotations omitted). The Eleventh Circuit recognizes that "employees may be constructively discharged by a demeaning motion or transfer," where the conditions after the transfer are objectively "intolerable." *Riley v. Birmingham Bd. of Educ.*, 154 F. App'x 114, 117 (11th Cir. 2005). Courts have found that a transfer resulted in intolerable working conditions when an employee is transferred to a new work station with no equipment and their responsibilities are reduced to "virtually nothing." *See Fitz*, 348 F.3d at 978; *Booth v. Houston*, 58 F.Supp.3d 1277, 1296 (M.D. Ala. 2014). Being transferred to a new position with less responsibility is not sufficient to show intolerable working conditions. As Plaintiff has not identified any facts supporting a conclusion that working in the Corrections Division was objectively intolerable, Plaintiff has not established that he was constructively discharged.

## II. Retaliation

Plaintiff's claim for retaliation[5] fails. Under Title VII, employers are prohibited from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Plaintiff does not allege that his transfer was a result of engaging in a protected activity. Rather, the transfer took place before he filed his EEOC complaint or otherwise complained of racial discrimination. Accordingly, Plaintiff was not retaliated against under Title VII.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 54) is **GRANTED**.

**SO ORDERED**, this   30th   day of   May   2017.

  /s/ Leslie J. Abrams  
**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[5] Plaintiff appears to have abandoned his retaliation claim. In Plaintiff's Complaint (Doc. 1), he alleged that he was retaliated against for writing citations for obscured tags. However, Plaintiff does not mention retaliation or these citations at all in his response to Defendant's Motion for Summary Judgment. "Grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *see also Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014). The Court will "show leniency to *pro se* litigants, but we will not serve as de facto counsel or rewrite a pleading in order to sustain an action." *Mendenhall v. Blackmun*, 456 F. App'x 849, 851 (11th Cir. 2012). Considering Plaintiff's *pro se* status, Plaintiff has still likely abandoned his claim for retaliation because he neither "articulates the elements of" retaliation in his response, "nor explained how any evidence in the record established" retaliation. *Nichols v. Volunteers of America, N. Ala., Inc.*, 470 F. App'x 757, 764 (11th Cir. 2012).